## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| CITY OF PONTIAC REESTABLISHED GENERAL EMPLOYEES' RETIREMENT SYSTEM, Individually and on Behalf of All Others Similarly Situated, | Civil Action No. |
| Plaintiff, | COMPLAINT -- CLASS ACTION |
| v. | JURY TRIAL DEMANDED |
| AVANTOR, INC., MICHAEL STUBBLEFIELD, R. BRENT JONES, JONATHAN PEACOCK, and STEVEN ECK, | |
| Defendants. | |

Plaintiff City of Pontiac Reestablished General Employees' Retirement System ("Plaintiff"), individually and on behalf of all others similarly situated, alleges the following based upon personal knowledge as to Plaintiff and Plaintiff's own acts and upon information and belief as to all other matters based on the investigation conducted by and through counsel, which included, among other things, a review of the public U.S. Securities and Exchange Commission ("SEC") filings of Avantor, Inc. ("Avantor" or the "Company"), Company press releases, conference call transcripts, investor presentations, analyst and media reports, and other public reports and information regarding the Company. Plaintiff believes that substantial additional evidentiary support exists for the allegations set forth herein, which evidence will be developed after a reasonable opportunity for discovery.

### NATURE OF THE ACTION

1.      This is a class action on behalf of persons and entities that purchased or otherwise acquired Avantor common stock between March 5, 2024 and October 28, 2025, inclusive (the

"Class Period").  Plaintiff brings this action seeking to recover damages caused by Defendants' (defined herein) violations of the federal securities laws under §§ 10(b) and 20(a) of the Securities Exchange Act of 1934 (the "Exchange Act") and Rule 10b5 promulgated thereunder.

2.    Avantor is a laboratory supply company based in Radnor, Pennsylvania.  Avantor was primarily a manufacturer of high-purity laboratory materials before it acquired laboratory supply distributor VWR Corporation ("VWR") in 2017.  Prior to the acquisition, VWR had a vast customer network of organizations in the biopharma, healthcare, academic, government, and industrial sectors.  Avantor's "transformational" acquisition of VWR for $6.4 billion, turned the Company into a global distribution platform serving hundreds of thousands of customers worldwide with millions of products.  Avantor emphasized that the merger would align its legacy entity's high-purity manufacturing strengths with VWR's global distribution and services footprint to accelerate growth across life sciences and advanced technology end markets.

3.    The combination of Avantor and VWR created a supply chain consisting of over 200 manufacturing and distribution facilities around the globe serving more than 300,000 customer locations across approximately 180 countries.  The Company tried to manage this complex supply chain through a set of proprietary operating practices and procedures called the Avantor Business System ("ABS").  ABS was designed by Avantor to keep operations relatively lean while maintaining high service levels to drive profitable growth and customer satisfaction.  The Company repeatedly touted its use of ABS to improve service levels, accuracy, and cost efficiency through the use of scaled automation, artificial intelligence ("AI"), and tightened operating discipline.

4.    Throughout the Class Period, Defendants misled investors by failing to disclose that: (a) Avantor had severely underinvested in its supply chain infrastructure, inventory

management systems, and customer service; (b) this lack of investment caused delayed and partial order fulfillment of critical lab products for key customers; (c) these issues resulted in customer attrition and loss of market share to competitors; (d) as a result of the foregoing, goodwill assigned to the VWR acquisition was materially overstated; and (e) Defendants' positive statements about the ABS strategy, competitive positioning, inventory management, customer service, and business prospects were materially false, misleading, or lacked a reasonable basis.

5.    Investors began to learn the truth about Avantor's supply chain failures and customer defections on April 25, 2025, when the Company reported weaker-than-expected quarterly results and cut its full-year financial outlook.  In connection with these disappointing numbers, Avantor disclosed "immediate" efforts to retain key accounts, including "improving data accuracy, accelerating fulfillment speeds and optimizing inventory."  In addition, the Company announced that it was "implementing a comprehensive strategy to strengthen our Lab Solutions segment and are committed to moving with urgency to improve performance across the business."  Finally, Avantor disclosed that it was the "right time to initiate a leadership transition" as Defendant Michael Stubblefield intended to resign from his CEO position once a successor was found.

6.    On this news, the price of Avantor common stock declined $2.57 per share, or 16.6%, to close at $12.93 per share on April 25, 2025.

7.    Then, on August 1, 2025, in connection with its second quarter 2025 earnings release, Avantor revealed that maintenance overruns and subsequent facility downtime at several plants compounded by raw material availability and equipment uptime issues forced the Company to defer shipments into the second half of the quarter.  The Company estimated that channel recovery would take multiple quarters, in some cases more than doubling the two- to three-month

order-to-delivery cycle for critical customer needs. The Company further reduced its 2025 financial forecasts and reported disappointing second quarter 2025 results, including a year-over-year decrease in net sales attributed to increased competitive intensity. Avantor also stated that the Company did not expect the competitive environment to materially improve in the remainder of 2025 and weak performance would therefore likely persist.

8.      On this news, the price of Avantor common stock declined $2.08 per share, or 15.5 percent, to close at $11.36 per share on August 1, 2025.

9.      Finally, on October 29, 2025, Avantor reported a $712 million net loss for the third quarter of 2025. Avantor also disclosed that it had faced a decline in organic revenue primarily related to "operational headwinds that are impacting our throughput, including raw material availability and equipment uptime." The Company admitted that inventory challenges were caused by a need to improve data accuracy, fulfillment speed, on-time performance, and targeted plant upgrades to address reliability at aging sites. The Company further reported a non-cash goodwill impairment charge of $785 million in connection with its Lab Solutions segment, which was due in part to the loss of several large accounts to a major competitor.

10.     Analysts were surprised by these revelations with some questioning management's credibility. For example, analysts at Jefferies stated that "Messaging from the new CEO and an action plan (plus credibility tied to it) will be key." Analysts at Bank of America characterized Avantor's plan to address the "self-inflicted" execution failures as necessary "to rebuild investor confidence and [management] credibility."

11.     On this news, the price of Avantor common stock declined $3.50 per share, or 23.2%, to close at $11.58 per share on October 29, 2025.

12. As a result of Defendants' wrongful acts and omissions, and the significant decline in the market value of the Company's common stock pursuant to the revelation of the fraud, Plaintiff and other members of the Class (defined herein) have suffered significant damages.

## JURISDICTION AND VENUE

13. The claims asserted herein arise under Sections 10(b) and 20(a) of the Exchange Act (15 U.S.C. §§ 78j(b) and 78t(a)) and Rule 10b-5 promulgated thereunder by the SEC (*see* 17 C.F.R. § 240.10b-5).

14. This Court has jurisdiction over the subject matter of this action pursuant to 28 U.S.C. § 1331 and Section 27 of the Exchange Act (15 U.S.C. § 78aa).

15. Venue is proper in this District pursuant to 28 U.S.C. § 1391(b) and Section 27 of the Exchange Act (15 U.S.C. § 78aa(c)). The Company's principal offices are located in this District. Substantial acts in the furtherance of the alleged fraud or the effects of the fraud have occurred in this District. Defendants' wrongful acts also arose in, emanated from, and caused harm in this District. Such acts include the dissemination of false and misleading statements into this District. Additionally, venue is proper in light of the purchase of the Company's stock by members of the Class who reside in this District.

16. In connection with the acts, transactions, and conduct alleged herein, Defendants, directly or indirectly, used the means and instrumentalities of interstate commerce, including, the United States mail, interstate telephone communications, and the facilities of a national securities exchange, the New York Stock Exchange.

## PARTIES

### A.    Plaintiff

17.    Plaintiff City of Pontiac Reestablished General Employees' Retirement System purchased or otherwise acquired Avantor common stock during the Class Period and was damaged as a result of Defendants' wrongdoing alleged in this complaint.

### B.    Defendants

18.    Defendant Avantor is incorporated in Delaware and headquartered in Radnor, Pennsylvania.  Avantor stock trades on the New York Stock Exchange under the ticker symbol "AVTR."

19.    Defendant Michael Stubblefield ("Defendant Stubblefield") was the Company's President and Chief Executive Officer until August 18, 2025.

20.    Defendant R. Brent Jones ("Defendant Jones") was the Company's Executive Vice President and Chief Financial Officer at all relevant times.

21.    Defendant Jonathan Peacock ("Defendant Peacock") was the Chairman of the Company's Board of Directors at all relevant times.

22.    Defendant Steven Eck ("Defendant Eck") was the Company's Chief Accounting Officer at all relevant times.

23.    Defendant Stubblefield, Defendant Jones, Defendant Peacock, and Defendant Eck are collectively referred to hereinafter as the "Individual Defendants."  The Individual Defendants, because of their positions with the Company, possessed the power and authority to control the contents of Avantor's reports to the SEC, press releases, and presentations to securities analysts, money portfolio managers and institutional investors, i.e., the market.  The Individual Defendants were provided with copies of the Company's reports and press releases alleged herein to be misleading prior to, or shortly after, their issuance and had the ability and opportunity to prevent

6

their issuance or cause them to be corrected.  Because of their positions and access to material non-public information available to them, the Individual Defendants knew that the adverse facts specified herein had not been disclosed to and were being concealed from, the public, and that the positive representations which were being made were then materially false or misleading.  The Individual Defendants are liable for the false statements pleaded herein, as those statements were each "group-published" information, the result of the collective actions of the Individual Defendants.

## SUBSTANTIVE ALLEGATIONS

### Company Background

24.    Avantor is a Radnor, Pennsylvania-based laboratory supply company that manufactures and distributes chemicals, lab equipment, and other scientific products to customers in pharmaceutical, biotechnology, education, and other industries.  The Company reports its business results in two segments: Laboratory Solutions ("LSS") and Bioscience Production ("BPS").  LSS serves as an "everything a scientist needs" platform, providing materials, equipment, instrumentation, and services through a global VWR distribution network to over 300,000 labs in approximately 180 countries.  BPS supplies chemicals and other materials for bioprocessing and various healthcare applications.  In 2024, LSS and BPS generated $4.6 billion and $2.2 billion, in respective revenue for the Company.

25.    In 2017, Avantor acquired VWR for $6.4 billion, including debt.  Under relevant accounting rules, Avantor reported goodwill on its balance sheet in connection with VWR, representing the excess of the VWR purchase price over the fair value of VWR's identifiable net assets.  Thus, goodwill is a catchall balance that values reputation, workforce know-how, expected synergies, and other VWR assets that are not accounted for individually on Avantor's balance sheet.  Avantor then has a continuous obligation to write down the goodwill value ascribed to

VWR when the premium paid for VWR is no longer justified due to business underperformance. At the start of the Class Period, Avantor reported goodwill, net of accumulated impairments ("Net Goodwill") of $5.7 billion.

26.     Prior to the acquisition, Avantor was primarily a manufacturer of laboratory materials while VWR was a laboratory supply distributor.  Through the acquisition, Avantor became a global distribution platform serving tens of thousands of customers worldwide with millions of products.  This created a complex supply chain that Avantor managed through a set of proprietary operating practices and procedures called the ABS.  The ABS was designed to keep operations relatively lean while maintaining a strong supply chain and high service levels to drive profitable growth and customer satisfaction.

### Materially False and Misleading Statements Issued During the Class Period

27.     The Class Period begins on March 5, 2024, when Avantor participated in a fireside chat at the TD Cowen Health Care Conference (the "TD Cowen Conference").  In response to an analyst's question about the benefits of the Company's new reporting structure during the TD Cowen Conference, Defendant Stubblefield responded:

> I think this is a much better way to run the business . . . aligning our business this way does focus us uniquely on what our customers are doing and ***allows us to better align our innovation portfolios or our offerings, and it should lead to enhanced growth and margin expansion over time.***

28.     In response to an analyst's question about the Laboratory Solutions business during the TD Cowen Conference, Defendant Stubblefield responded:

> I think as we look at that segment, first of all, it gives us ***unparalleled access to our customers, and we leverage that access across more than 300,000 locations to seed the content that ultimately gets specced in for our Production segment***.  And that's an important part of that platform.  But on its own, it's a great business.

We think there's some opportunities to accelerate growth by focusing on the high-growth workflows that are in that space. We think ***there's an opportunity to continue to enhance the level of proprietary content in that platform, which will not only help with the top line, but will also help with margin expansion***. And ***we'll continue to invest aggressively not only in the physical infrastructure to maintain the service levels that our customers have come to expect from us***, but also in the digital infrastructure that can create so many efficiencies and further ingrain us in our customers' workflows.

29.    In response to an analyst's question during the TD Cowen Conference about Avantor's competitive positioning in its Laboratory Solutions business, Defendant Stubblefield emphasized that Avantor's competitive position "[c]ontinues to be strong," further representing that:

We had a really terrific year in 2023. ***The commercial intensity has ramped up on this platform dramatically, I would say, over the last 12 to 18 months***. And we've seen meaningful signs of that. We grew our academia position last year, high single digits, low double digits, a really terrific year where we were clearly taking share another really strong year in biopharma with a lot of new customers and extensions of some important agreements there.

So ***we continue to have confidence in the positioning [of] a lot of investments in our digital capabilities there*** to make it more efficient for our customers to engage with us, minimize the time that they're spending on some of these more administrative tasks.

And if I look at just some proof points there, the traffic to our sites relative to our competitors is a nice indicator for our business. And then ***some of the solutions that we've deployed into our customers, whether it be some of the auto replenishment tools that we've deployed, or some of the inventory management tools that we've deployed, just a lot of momentum that we have off of that platform***. So we like the set up the activity is good, and we do anticipate a bit of growth this year.

30.    On April 26, 2024, the Company filed with the SEC a Form 10-Q reporting the Company's financial results for the first quarter of 2024 (the "Q1 2024 10-Q"). The Q1 2024 10-Q was signed by Senior Vice President and Chief Accounting Officer Steven Eck, and included

certifications signed by Defendant Stubblefield and Defendant Jones pursuant to Section 906 of

the Sarbanes-Oxley Act of 2022 (the "SOX Act"). The Q1 2024 10-Q reported that goodwill "net

of accumulated impairment losses of $38.8 [million]" was valued at *$5,762.0 million* as of March

31, 2024.

31.     In the Q1 2024 10-Q, the Company stated that "Quantitative and qualitative

disclosures about market risk appear in Item 7A in the Company's 2023 Annual Report [(the "2023

10-K") and there] were no material changes during the quarter ended March 31, 2024 to this

information as reported" in the 2023 10-K. The 2023 10-K contained the below risk factors

concerning Avantor's reliance on sole or limited sources, exposure to input availability and

pricing, and dependence on suppliers' ability to meet specifications and delivery schedules:

> If we are unable to manufacture our products consistently, in
> sufficient quantities, and on a timely basis, our net sales, gross
> margins and our other operating results will be materially and
> adversely affected. In addition, we have experienced problems with,
> or delays in, our production, shipping and logistics capabilities that
> have resulted in delays in our ability to ship finished products, and
> there can be no assurance that we will not encounter such problems
> in the future. *Significant delays in our manufacturing, shipping
> or logistics processes could damage our customer relationships,
> cause disruption to our customers and adversely affect our
> business, financial condition and operating results*.
>
> […]
>
> We compete in highly competitive markets. Failure to compete
> successfully could adversely affect our business, financial condition
> and results of operations.
>
> […]
>
> Moreover, *we are dependent upon the ability of our suppliers to
> provide materials and components that meet our specifications,
> quality standards, other applicable criteria, and delivery
> schedules*. Our suppliers' failure to provide expected raw materials
> or components that meet such criteria could adversely affect
> production schedules and contract profitability and negatively
> impact our results of operations.

[…]

We have experienced inventory fluctuations and build up at customers as a result of global supply chain disruptions and have experienced inflationary pressures across all of our cost categories. While *we have implemented pricing and productivity measures to combat these pressures*, they may continue to adversely impact our results.

32.    On the same day, the Company hosted an earnings call for the first quarter of 2024 (the "Q1 2024 Call").  During prepared remarks on the Q1 2024 Call, Defendant Stubblefield stated:

During the first quarter, we aligned our organization with the new business segments and initiated several work streams to optimize the Avantor customer experience.  Our commercial intensity and the relevance of our workflow solutions resulted in multiple competitive wins and contract renewals with biopharma, healthcare, and education and government customers.

As part of our innovation strategy, we enhanced our offerings for cell engineering, gene therapy and synthetic biology applications through supplier partnerships and proprietary innovation.

*We also advanced our multi-year cost transformation initiative, including footprint optimization, organizational efficiency, go-to-market and procurement savings.  Our disciplined execution enabled us to accelerate the realization of some savings into the first quarter, contributing to our margin and profitability outperformance*.

33.    During the question and answer portion of the Q1 2024 Call, Defendant Stubblefield stated:

We're starting to see some nice acceleration [in LSS], which I think is *reflective of the destocking trends that we're seeing and the improvement of inventory health, as well as just a good indicator of funding and activity levels, engagement with our customers across the board*.

[…]

We're laser focused on executing our long-term growth strategy, which means we're investing in innovation, new product

11

introductions, strategic marketing, *a lot of investments in our digital platform to position our business for sustained long-term growth and to build on our leading position in both of our segments*.

[…]

We continue to see nice growth [in the Lab Solutions segment] and *nice penetration and a lot of new customer wins there, a lot of important contract renewals*. That's an end market or a customer segment that historically has been a little bit more open to churn. I'm not sure we're seeing it any differently now, maybe we're playing it a bit more aggressively now. But just with a more fixed budget environment and less sensitivity to maybe some of the high regulatory environment that a biopharma customer might have, that is an area that we think that we can continue to be successful with.

34.    On May 9, 2024, the Company held the 2024 Annual Meeting of Stockholders of Avantor, Inc. (the "2024 Annual Shareholder Meeting"). During the 2024 Annual Shareholder Meeting, Jonathan Peacock, Chairman of the Board of Directors of Avantor made the following statement about the Company's supply chain investments:

[I]n 2023, we earned new and expanded multi-year customer relationships that reflect that value at every stage of the scientific journey from research to commercialization. *We've also made purposeful strategic investments in manufacturing capacity, supply chain innovation and digital capabilities to drive efficiencies and position the company for future growth.* The new operating model we unveiled during our December 2023 Investor Day is designed to enhance operational efficiency and sharpen our focus on further building our Bioscience Production and Lab Solutions businesses.

35.    On May 14, 2024, Avantor participated in the Bank of America Global Healthcare Conference (the "2024 Bank of America Conference"). During the 2024 Bank of America Conference, Defendant Stubblefield was asked about "indispensable" purchases from typical laboratory customers:

Just consistent with the rest of our portfolio, these are the necessities of a lab for a scientist to do their work. And if you're outfitting a

> new lab and you're worried about spend, these are items you can't do without . . . and ***so it's great positioning***.

36.    On May 30, 2024, Defendant Stubblefield represented Avantor at the Sanford C. Bernstein Strategic Decisions Conference (the "Bernstein Conference").  During the Bernstein Conference, Stubblefield made the following statements about the Company's supply chain logistics:

> We round out our offering to really build complete end-to-end workflow solutions through the partnerships that we have with our critical third-party suppliers, of which we have more than 5,000.  To grow this business, we're focused on high-growth workflows, we're focused on innovation, and ***we're an important source of bringing innovation and innovative solutions to our customers in the lab and bringing efficiency and productivity to them through the digital tools that we deploy***.
>
> […]
>
> It was an important transition for the company . . . it was really a natural evolution of how we've built out the model. And I think it recognizes the strength and positioning that we have within the laboratory environment as well as within our production capabilities.  And ***it's a better alignment of our capabilities with our customers' needs and it brings I think better focus and accountability for us in that regard***.
>
> […]
>
> There's a tremendous opportunity here to bring novel therapeutics to treat diseases that have been untreatable up until now.  And so, the pipelines are bursting.  And whether it's being developed at a biotech startup or a traditional large pharma company, for us, it's really all same. We're providing all of the content that they need to facilitate that research.  ***My platform gives me access to all of these labs around the world. And in fact that was the driver for bringing VWR and Avantor together was to be able to give me access to all these disparate labs around the world***.
>
> […]
>
> The demographics of the population, chronic diseases and other things, it all provide a macro environment where this business is going to continue to thrive and we're extremely well-

positioned. The innovation pipeline here literally has – I don't know what the current number is, but it's well over 500 projects underway here and a rich history of providing new technologies into the space. So, the business model itself, as I mentioned in our presentation, runs exactly like it does for our bioprocessing business. ***So, we would work with the device designers early in their development processes to customize the solution, support them through the regulatory filings, become part of their specification, and then support them at scale in production***. And so, the business model itself is identical. You're really overweighting on our expertise around material science, around purification to produce materials, part-per-billion type levels of impurities. So, the business model itself is part and parcel for what we do. The other thing is it's part of the larger ecosystem. ***So, we're able to leverage the supply chain, the digital, the quality, regulatory capabilities that we use to serve our other platforms. So, there's actually quite some synergies***.

[…]

We've got a lot of wood to chop here on 2024 and we'll take the time the next couple of quarters to see how things evolve. It is a dynamic environment. But I think our view still is the same that ***these markets will recover over the next one to two years, and we're incredibly well-positioned to take advantage of it when it does***.

37.     Defendants continued to downplay concerns about Avantor's supply chain logistics. For example, at a Goldman Sachs healthcare industry conference on June 11, 2024, in response to an analyst's question about how Avantor's "portfolio [is] differentiated from peers" in bioprocessing end markets, Defendant Stubblefield stated:

The dynamics are a little bit different in the two segments that we run in our lab segments, which is largely a book and ship type business where ***my supply chain is capable of reaching our customers in a 24 to 48-hour period. Orders are coming in and going out, essentially real time and that's kind of the level of visibility that we have in that part of the business***.

Similarly, on the production side of the business, as things have normalized coming out of the pandemic, ***our supply chain has reset and we're working off of lead times and order books that are roughly two to three months which is similar to what we had going into the pandemic back in 2019***.

So, we have a bit more visibility there, but not substantially more. And so, that's kind of the defining elements of how we are able to look into the future there. *So, in lab, a few days to a week, on the production side, a few months*.

I would say relative to last year or this year, the visibility hasn't really changed structurally. I would say *as the supply chains improved, things have kind of reset to the way they ran prior to the pandemic, though*.

38.    On July 26, 2024, the Company filed with the SEC a Form 10-Q reporting the Company's financial results for the second quarter of 2024 (the "Q2 2024 10-Q"), which was signed by Senior Vice President and Chief Accounting Officer Steven Eck and included certifications signed by Defendant Stubblefield and Defendant Jones pursuant to Section 906 of the Sarbanes-Oxley Act of 2022 (the "SOX Act"). The Q2 2024 10-Q reported that goodwill "net of accumulated impairment losses of $38.8 [million]" was valued at *$5,659.6 million* as of June 30, 2024.

39.    In the Q2 2024 10-Q, the Company stated that "Quantitative and qualitative disclosures about market risk appear in Item 7A in the Company's 2023 Annual Report [(the "2023 10-K") and there] were no material changes during the quarter ended March 31, 2024 to this information as reported" in the 2023 10-K. The 2023 10-K contained the risk factors described above in ¶ 31, *supra*, concerning Avantor's reliance on sole or limited sources, exposure to input availability and pricing, and dependence on suppliers' ability to meet specifications and delivery schedules.

40.    On the same day, the Company participated in a conference call to discuss the Q2 2024 10-Q results (the "Q2 2024 10-Q Earnings Call"). In opening remarks during the Q2 2024 10-Q Earnings Call, Defendant Stubblefield represented that the Company was "*working with our suppliers to create a more sustainable supply chain*."

41.     Similarly, on October 25, 2024, the Company filed with the SEC a Form 10-Q reporting the Company's financial results for the third quarter of 2024 ("Q3 2024 10-Q").  The Q3 2024 10-Q reported that goodwill "net of accumulated impairment losses of $38.8 [million]" was valued at **$5,670.6 million** as of September 30, 2024.  During the conference call to discuss the Company's Q3 2024 10-Q, Defendant Stubblefield represented that "***We continue to improve the efficiency and productivity of our supply chain operations***."

42.     On February 7, 2025, the Company filed with the SEC a Form 10-K reporting the Company's financial results for the fourth quarter of 2024 ("2024 10-K") and provided guidance for fiscal year 2025.  The 2024 10-K reported that total net goodwill was valued at **$5,539.2 million** as of December 31, 2024.  In the accompanying earnings call that same day, Defendant Jones represented that "***we are entering 2025 well positioned for growth***."  Jones assured investors that "[t]he implementation of our new operating model, the progress of our cost transformation initiatives, and ***encouraging trends we are seeing across key end-markets***, particularly bioprocessing, all give us ***confidence in forecasting organic revenue growth, continued market expansion, and double-digit EPS growth in 2025***."  Specifically, Jones projected "organic revenue growth of 1% to 3%" and "low single digit organic growth in Lab Solutions."  Defendant Stubblefield likewise stated that "[w]e have a solid plan for the year and I am confident that we will continue to execute well."

43.     On March 27, 2025, the Company published its 2024 Annual Report, which made the following statements about Avantor's goodwill:

> [W]e reorganized our segment reporting structure effective January 1, 2024.  The segment reporting reorganization also resulted in a change to our reporting units for the purpose of goodwill impairment testing.  Our new reporting units are Buy Sell Lab, Proprietary Lab, Services, Manufactured Products, Buy Sell Production, and NuSil. ***As a result of the reorganization, our goodwill was reassigned to***

16

*the new reporting units making up our Laboratory Solutions and Bioscience Production reporting segments.*

*We have reassigned goodwill as of January 1, 2024 to align to our new segment structure by using a relative fair value approach as required under GAAP. We tested goodwill for impairment immediately before and after the reorganization of our reporting structure; no impairment was identified.*

The following table presents goodwill by our reportable segments, on the effective date of the change:

| (in millions) | Laboratory Solutions | Bioscience Production | Total |
|---|---|---|---|
| Goodwill, gross | $3,842.0 | $1,913.5 | $5,755.5 |
| Accumulated impairment losses | (18.4) | (20.4) | (38.8) |
| Goodwill, net | $3,823.6 | $1,893.1 | $5,716.7 |

The following table presents goodwill by our reportable segments, on the effective date of the change:

| | December 31, 2024 | | |
| (in millions) | Laboratory Solutions | Bioscience Production | Total |
|---|---|---|---|
| Beginning balance, net | $3,823.6 | $1,893.1 | $5,716.7 |
| Currency translation | (113.4) | (5.1) | (118.5) |
| Divestitures | (59.0) | — | (59.0) |
| Ending balance, net | 3,651.2 | 1,888.0 | 5,539.2 |
| Accumulated impairment losses | 18.4 | 20.4 | 38.8 |
| Ending balance, gross | $3,669.6 | $1,908.4 | $5,578.0 |

44.    The above statements identified in ¶¶ 27-43 were materially false and misleading, and failed to disclose materially adverse facts, about the Company's business and operations. Specifically, Defendants misrepresented and/or failed to disclose that: (a) Avantor had severely underinvested in its supply chain infrastructure, inventory management systems, and customer service; (b) this lack of investment caused delayed and partial order fulfillment of critical lab products for key customers; (c) these issues resulted in customer attrition and loss of market share to competitors; (d) as a result of the foregoing, goodwill assigned to the VWR acquisition was materially overstated; and (e) Defendants' positive statements about the ABS strategy, competitive

17

positioning, inventory management, customer service, and business prospects were materially false and/or misleading or lacked a reasonable basis.

**The Truth Begins to Emerge While Avantor Continues to Mislead Investors**

45.    On April 25, 2025, investors began to learn the truth about Avantor's supply chain failures and customer defections when the Company reported weak first quarter 2025 results for the first quarter of 2025 (the "Q1 2025 10-Q") and cut its full-year financial forecasts.   In connection with these disappointing numbers, Avantor disclosed "immediate" efforts to retain key accounts, including "improving data accuracy, accelerating fulfillment speeds and optimizing inventory."   The Company also stated that it was "implementing a comprehensive strategy to strengthen our Lab Solutions segment and are committed to moving with urgency to improve performance across the business."   The Company further announced that its CEO, Defendant Michael Stubblefield, would be resigning.

46.    On this news, the price of Avantor stock declined $2.57 per share, or 16.6%, from a close of $15.50 per share on April 24, 2025, to close at $12.93 per share on April 25, 2025.

47.    While this news partially revealed Defendants' fraud, Avantor continued to defraud investors by failing to disclose that it had severely underinvested in its supply chain infrastructure, inventory management systems, and customer service, leading to significant customer defections to competitors.   For example, the Q3 2024 10-Q reported that goodwill "net of accumulated impairment losses of $38.8 [million]" was valued at ***$5,609.1 million*** as of March 31, 2025.

48.    On May 13, 2025, Avantor participated in the Bank of America Global Healthcare Conference (the "2025 Bank of America Conference").   During the 2025 Bank of America Conference, Defendant Stubblefield stated:

> I think to start, what I'd just reiterate is just our confidence in the strength and resilience of our platform.  I think about our Lab Solutions segment, ***we have differentiated capabilities, a broad and***

*expanding portfolio and a supply chain that enables us to serve more than 300,000 customers reliably around the world*. In our Bioscience Production segment, we have a leading bioprocessing franchise and we are the leading supplier of medical grade silicone formulations.

[…]

Quite a number of actions that have been in-flight now for a couple of quarters around *differentiated supply chain performance, expanding our portfolio with innovative new partners as well as investments in our digital capabilities and pricing*. Those will certainly improve the top line as we move forward. And we highlighted some incremental cost actions that we've identified that will play out over the next several years.

49.    Then, on August 1, 2025, Avantor disclosed disappointing quarterly results for the second quarter of 2025 (the "Q2 2025 10-Q"), further reducing its 2025 guidance and reporting a year-over-year decrease in net sales, again attributed to "increased competitive intensity." The Company admitted that maintenance overruns and subsequent facility downtime at several plants compounded by raw material availability and equipment uptime issues forced the Company to defer shipments into the second half of the quarter, with recovery over multiple quarters, in some cases more than doubling the two- to three-month order-to-delivery cycle for customers. Avantor also admitted that the Company did not expect the competitive environment to materially improve in the remainder of 2025 and weak performance would therefore likely persist.

50.    On this news, the price of Avantor common stock declined $2.08 per share, or more than 15 percent, from a close of $13.44 per share on July 31, 2025, to close at $11.36 per share on August 1, 2025.

51.    The Q2 2025 10-Q reported that goodwill "net of accumulated impairment losses of $38.8 [million]" was valued at *$5,762.2 million* as of June 30, 2025.

52.    The above statements identified in ¶¶ 47-48 and 51 were materially false and misleading, and failed to disclose materially adverse facts, about the Company's business and

operations. Specifically, Defendants misrepresented and/or failed to disclose that: (a) Avantor had severely underinvested in its supply chain infrastructure, inventory management systems, and customer service; (b) this lack of investment caused delayed and partial order fulfillment of critical lab products for key customers; (c) these issues resulted in customer attrition and loss of market share to competitors; (d) as a result of the foregoing, goodwill assigned to the VWR acquisition was materially overstated; and (e) Defendants' positive statements about the ABS strategy, competitive positioning, inventory management, customer service, and business prospects were materially false and/or misleading or lacked a reasonable basis.

### The Truth Is Fully Revealed

53.     Finally, on October 29, 2025, Avantor reported quarterly results for the third quarter of 2025 (the "Q3 2025 10-Q") and disclosed that it had faced a "decline in organic revenue primarily related to "operational headwinds that are impacting our throughput, including raw material availability and equipment uptime." The Company admitted that inventory challenges were caused by a need to improve data accuracy, fulfillment speed, and on-time performance. The Company further admitted that it would undertake plant upgrades to address reliability at aging sites. The Q3 2025 10-Q reported weak third quarter 2025 financial results and a net loss of $712 million, which Defendants primarily attributed to a non-cash goodwill impairment charge of $785 million. Defendants further revealed that the impairment charge was necessary due in part to the loss of several large accounts to a major competitor.

54.     During the accompanying earnings call that same day, Defendant Jones revealed that the large impairment charge was "associated with our Lab distribution business"—which makes up a majority of Avantor's Laboratory Solutions business segment—and "was necessitated in large part by the continued weakness in our share price as well as the margin headwinds this business is facing." Defendant Jones further admitted that the Company's "margin headwinds"

included competitive challenges that had "pressured [Avantor's] ability to get price, which has meaningfully impacted margins year-over-year. On a sequential basis."

55.    Moreover, Emmanuel Ligner—the Company's new President and Chief Executive Officer as of August 18, 2025—revealed in response to an analyst's question about market share that Avantor had "lost a couple of large accounts."  Further demonstrating the ongoing negative effects of Avantor's competitive struggles, Defendant Jones admitted that "we're seeing the impact of the contract losses on share there" and that "[i]t will take time both on the defense and the new contract wins to see those come in there."

56.    On this news, the price of Avantor common stock declined $3.50 per share, or more than 23%, from a close of $15.08 per share on October 28, 2025, to close at $11.58 per share on October 29, 2025.

57.    As a result of Defendants' wrongful acts and omissions, and the precipitous decline in the market value of the Company's stock, Plaintiff and other Class members have suffered significant losses and damages.

## ADDITIONAL SCIENTER ALLEGATIONS

58.    During the Class Period, as alleged herein, the Individual Defendants acted with scienter in that the Individual Defendants knew or were reckless as to whether the public documents and statements issued or disseminated in the name of the Company during the Class Period were materially false and misleading; knew or were reckless as to whether such statements or documents would be issued or disseminated to the investing public; and knowingly and substantially participated or acquiesced in the issuance or dissemination of such statements or documents as primary violations of the federal securities laws.

59.    The Individual Defendants permitted Avantor to release these false and misleading statements and failed to file the necessary corrective disclosures, which artificially inflated the value of the Company's common stock.

60.    As set forth herein, the Individual Defendants, by virtue of their receipt of information reflecting the true facts regarding Avantor, their control over, receipt, or modification of Avantor's allegedly materially misleading statements and omissions, or their positions with the Company that made them privy to confidential information concerning Avantor, participated in the fraudulent scheme alleged herein.

61.    The Individual Defendants are liable as participants in a fraudulent scheme and course of conduct that operated as a fraud or deceit on purchasers of Avantor common stock by disseminating materially false and misleading statements or concealing material adverse facts.  The scheme deceived the investing public regarding Avantor's business, operations, and management and the intrinsic value of Avantor stock and caused Plaintiff and members of the Class to purchase Avantor stock at artificially inflated prices.

**LOSS CAUSATION/ECONOMIC LOSS**

62.    During the Class Period, as detailed herein, Avantor and the Individual Defendants made false and misleading statements and engaged in a scheme to deceive the market and a course of conduct that artificially inflated the prices of Avantor common stock and operated as a fraud or deceit on Class Period purchasers of Avantor common stock by misrepresenting the Company's business and prospects.  Later, when Defendants' prior misrepresentations and fraudulent conduct became known to the market, the price of Avantor common stock declined as the prior artificial inflation came out of the price over time.  As a result of their purchases of Avantor common stock during the Class Period, Plaintiff and other members of the Class suffered economic loss, i.e., damages, under the federal securities laws.

### C.    Applicability of Presumption of Reliance: Fraud on the Market

63.    Plaintiff will rely upon the presumption of reliance established by the fraud-on-the-market doctrine in that, among other things:

(a)    Defendants made public misrepresentations or failed to disclose material facts during the Class Period;

(b)    the omissions and misrepresentations were material;

(c)    the Company's common stock traded in an efficient market;

(d)    the misrepresentations alleged would tend to induce a reasonable investor to misjudge the value of the Company's common stock; and

(e)    Plaintiff and other members of the Class purchased Avantor common stock between the time Defendants misrepresented or failed to disclose material facts and the time the true facts were disclosed, without knowledge of the misrepresented or omitted facts.

64.    At all relevant times, the markets for Avantor common stock were efficient for the following reasons, among others:

(a)    as a regulated issuer, Avantor filed periodic public reports with the SEC;

(b)    Avantor regularly communicated with public investors via established market communication mechanisms, including through regular disseminations of press releases on the major newswire services and through other wide-ranging public disclosures, such as communications with the financial press, securities analysts, and other similar reporting services;

(c)    Avantor was followed by numerous securities analysts employed by a major brokerage firm(s) who wrote reports that were distributed to the sales force

and certain customers of their respective brokerage firm(s) and that were

publicly available and entered the public marketplace; and

(d)     Avantor common stock was actively traded in an efficient market, the New

York Stock Exchange, under the ticker symbol "AVTR."

65.     As a result of the foregoing, the market for Avantor common stock promptly digested current information regarding Avantor from publicly available sources and reflected such information in Avantor's common stock prices.  Under these circumstances, all purchasers of Avantor common stock during the Class Period suffered similar injury through their purchase of Avantor common stock at artificially inflated prices and the presumption of reliance applies.

66.     Further, to the extent that the Defendants concealed or improperly failed to disclose material facts with regard to the Company, Plaintiff and the Class are entitled to a presumption of reliance in accordance with *Affiliated Ute Citizens of Utah v. United States*, 406 U.S. 128, 153 (1972).

**D.     No Safe Harbor**

67.     The statutory safe harbor provided for forward-looking statements under certain circumstances does not apply to any of the allegedly false statements pleaded in this Complaint. The statements alleged to be false and misleading herein all relate to then-existing facts and conditions.  In addition, to the extent certain of the statements alleged to be false may be characterized as forward looking, they were not identified as "forward-looking statements" when made and there were no meaningful cautionary statements identifying important factors that could cause actual results to differ materially from those in the purportedly forward-looking statements. In the alternative, to the extent that the statutory safe harbor is determined to apply to any forward-looking statements pleaded herein, Defendants are liable for those false forward-looking statements because at the time each of those forward-looking statements were made, the speaker

had actual knowledge that the forward-looking statement was materially false or misleading, or the forward-looking statement was authorized or approved by an executive officer of Avantor who knew that the statement was false when made.

## II.    CLASS ACTION ALLEGATIONS

68.    Plaintiff brings this action as a class action pursuant to Federal Rule of Civil Procedure 23(a) and (b)(3) on behalf of a Class, consisting of all those who purchased or otherwise acquired Avantor common stock during the Class Period and were damaged upon the revelation of the alleged corrective disclosure.  Excluded from the Class are Defendants, the officers and directors of the Company at all relevant times, members of their immediate families and their legal representatives, heirs, successors or assigns, and any entity in which Defendants have or had a controlling interest.

69.    The members of the Class are so numerous that joinder is impracticable.  Avantor common stock is actively traded on the New York Stock Exchange.  While the exact number of Class members is unknown to Plaintiff at this time and can only be ascertained through discovery, Plaintiff believes there are hundreds, if not thousands, of members in the Class.  Record owners and other Class members may be identified from records procured from or maintained by the Company or its transfer agent and may be notified of the pendency of this action using a form of notice similar to that customarily used in securities class actions.

70.    Plaintiff's claims are typical of the claims of the members of the Class as all members of the Class are similarly affected by Defendants' wrongful conduct in violation of federal law that is complained of herein.

71.    Plaintiff will fairly and adequately protect the interests of the members of the Class and has retained counsel competent and experienced in class and securities litigation.  Plaintiff has no interests antagonistic to or in conflict with those of the Class.

72.     Common questions of law and fact exist as to all Class members and predominate over any questions solely affecting individual Class members, including:

(a)     whether the federal securities laws were violated by Defendants' acts as alleged herein;

(b)     whether statements made by Defendants to the investing public during the Class Period misrepresented material facts about the business, operations and management of Avantor;

(c)     whether the Individual Defendants caused Avantor to issue false and misleading financial statements during the Class Period;

(d)     whether Defendants acted knowingly or recklessly in issuing false and misleading financial statements;

(e)     whether the prices of Avantor common stock during the Class Period were artificially inflated because of the Defendants' conduct complained of herein; and

(f)     whether the members of the Class have sustained damages and, if so, what is the proper measure of damages.

73.     A class action is superior to other available methods for the fair and efficient adjudication of this controversy.  Because the damages suffered by individual Class members may be relatively small, the expense and burden of individual litigation make it exceedingly difficult, if not impossible and impracticable, for Class members to individually redress the wrongs alleged. There will be no difficulty in managing this action as a class action.

## COUNT I

### For Violation of Section 10(b) of the Exchange Act and Rule 10b-5 Against Avantor and the Individual Defendants

74.    Plaintiff repeats and realleges each and every allegation contained in the foregoing paragraphs as if fully set forth herein.

75.    During the Class Period, the Defendants disseminated or approved the false statements specified above, which they knew or recklessly disregarded were misleading in that they contained misrepresentations and failed to disclose material facts necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading.

76.    Defendants violated Section 10(b) of the Exchange Act and Rule 10b-5 in that they:

(a)    Employed devices, schemes, and artifices to defraud;

(b)    Made untrue statements of material facts and/or omitted to state material facts necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading; or

(c)    Engaged in acts, practices, and a course of business that operated as a fraud or deceit upon Plaintiff and others similarly situated in connection with their purchases of Avantor stock during the Class Period.

77.    Plaintiff and Class members have suffered damages in that, in reliance on the integrity of the market, they paid artificially inflated prices for Avantor stock.  Plaintiff and Class members would not have purchased Avantor stock at the prices they paid, or at all, if they had been aware that the market prices had been artificially and falsely inflated by Defendants' misleading statements.

78.     As a direct and proximate result of Defendants' wrongful conduct, Plaintiff and the other members of the Class suffered damages in connection with their purchases of Avantor stock during the Class Period.

## COUNT II

### For Violation of Section 20(a) of the Exchange Act Against the Individual Defendants

79.     Plaintiff repeats and realleges the allegations contained in ¶¶ 1-73 as if fully set forth herein.

80.     The Individual Defendants acted as controlling persons of Avantor within the meaning of Section 20(a) of the Exchange Act.  By virtue of their positions and their power to control the actions of Avantor and its employees.  By reason of such conduct, the Individual Defendants are liable pursuant to Section 20(a) of the Exchange Act.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff, individually and on behalf of the proposed Class, respectfully pray for judgment against Defendants as follows:

(A)     Determining that this action is a proper class action, designating Plaintiff as Lead Plaintiff and certifying Plaintiff as a class representative under Rule 23 of the Federal Rules of Civil Procedure and Plaintiff's counsel as Lead Counsel;

(B)     Awarding Plaintiff and the Class compensatory damages against all Defendants, jointly and severally, for all damages sustained as a result of defendants' wrongdoing, in an amount to be proven at trial, together with pre-judgment interest thereon;

(C)     Awarding Plaintiff and the Class their reasonable costs and expenses incurred in this action, including, but not limited to, attorneys' fees and costs incurred by consulting and testifying expert witnesses; and

(D)    Granting such other, further, and/or different relief as the Court deems just and proper.

## III.    DEMAND FOR JURY TRIAL

Plaintiff demands a trial by jury.

DATED: November 25, 2025    Respectfully submitted,

*/s/ John C. Coyle*
**LABATON KELLER SUCHAROW LLP**
John C. Coyle (PA# 334759)
Francis P. McConville
Guillaume Buell
Connor C. Boehme
140 Broadway
New York, New York 10005
Telephone: (212) 907-0700
Facsimile: (212) 818-0477
jcoyle@labaton.com
fmcconville@labaton.com
gbuell@labaton.com
cboehme@labaton.com

*Counsel for Plaintiff*

**ASHERKELLY**
Cynthia J. Billings-Dunn
25800 Northwestern Hwy, Suite 1100
Southfield, Michigan 48075
Telephone: (248) 746-2747
cbdunn@asherkellylaw.com

*Additional Counsel for Plaintiff*

## CERTIFICATION

I, Sheldon Albritton, as Chairman of City of Pontiac Reestablished General Employees' Retirement System ("Pontiac General"), hereby certify as follows:

1.      I am fully authorized to enter into and execute this Certification on behalf of Pontiac General.  I have reviewed a complaint prepared against Avantor, Inc. ("Avantor") alleging violations of the federal securities laws and authorize the filing of this pleading;

2.      Pontiac General did not purchase common stock of Avantor at the direction of counsel or in order to participate in any private action under the federal securities laws;

3.      Pontiac General is willing to serve as a lead plaintiff and representative party in this matter, including providing testimony at deposition and trial, if necessary.  Pontiac General fully understands the duties and responsibilities of the lead plaintiff under the Private Securities Litigation Reform Act, including the selection and retention of counsel and overseeing the prosecution of the action for the Class;

4.      Pontiac General's transactions in Avantor common stock during the Class Period are reflected in Exhibit A, attached hereto;

5.      Pontiac General sought to serve and was appointed as a lead plaintiff on behalf of a class in the following class actions under the federal securities laws filed during the last three years:

*Ohio Carpenters Pension Fund v. Norfolk Southern Corp*oration, No. 1:23-cv-04068 (S.D.N.Y.)
*Michiana Area Electrical Workers' Pension Fund v. Inari Medical, Inc.*, No. 1:24-cv-03686 (S.D.N.Y.)
*In re Arconic Corporation Securities Litigation*, No. 1:25-cv-00863 (S.D.N.Y.)
*Deslande v. Fortrea Holdings Inc.*, No. 1:25-cv-04630 (S.D.N.Y.)

6.      Pontiac General sought to serve as a lead plaintiff or representative party in the following class actions under the federal securities laws filed during the last three years and its application is pending:

*City of Pontiac Reestablished General Employees' Retirement System v. Inspire Medical Systems, Inc.,*
No. 0:25-cv-4247 (D. Minn.)

7.      Pontiac General sought to serve as a lead plaintiff or representative party in the following class actions under the federal securities laws filed during the last three years but either

withdrew its motion for lead plaintiff or was not appointed lead plaintiff:

*Genesee County Employees' Retirement System v. Kornit Digital Ltd.*, No. 2:23-cv-0888 (D.N.J.)
*Bhangal v. Hawaiian Electric Industries, Inc.*, No. 3:23-cv-04332 (N.D. Cal.)
*In re Sarepta Therapeutics Securities Litigation*, No. 1:25-cv-05317 (S.D.N.Y.)

8.      Beyond its pro rata share of any recovery, Pontiac General will not accept payment for serving as a lead plaintiff and representative party on behalf of the Class, except the reimbursement of such reasonable costs and expenses (including lost wages) as ordered or approved by the Court.

I declare under penalty of perjury, under the laws of the United States, that the foregoing is true and correct this __12__ day of November, 2025.

Sheldon Albritton
*Chairman*
*City of Pontiac Reestablished General Employees'*
*Retirement System*

**EXHIBIT A**

**TRANSACTIONS IN AVANTOR, INC.**

| Transaction Type | Trade Date | Shares | Share Price | Cost/Proceeds |
|---|---|---|---|---|
| Purchases | 07/25/2024 | 12,751 | $22.8200 | ($290,977.82) |
| Purchases | 07/25/2024 | 6,153 | $22.8200 | ($140,411.46) |
| Sales | 09/20/2024 | (114) | $26.9900 | $3,076.86 |
| Sales | 09/20/2024 | (56) | $26.9900 | $1,511.44 |
| Sales | 09/30/2024 | (45) | $25.8700 | $1,164.15 |
| Sales | 09/30/2024 | (21) | $25.8700 | $543.27 |
| Sales | 10/10/2024 | (60) | $24.4700 | $1,468.20 |
| Sales | 10/10/2024 | (29) | $24.4700 | $709.63 |
| Sales | 11/22/2024 | (42) | $20.7800 | $872.76 |
| Sales | 11/22/2024 | (20) | $20.7800 | $415.60 |
| Purchases | 12/20/2024 | 181 | $21.2100 | ($3,839.01) |
| Purchases | 12/20/2024 | 87 | $21.2100 | ($1,845.27) |
| Sales | 01/24/2025 | (117) | $22.0600 | $2,581.02 |
| Sales | 01/24/2025 | (56) | $22.0600 | $1,235.36 |
| Sales | 02/28/2025 | (1,409) | $16.7000 | $23,530.30 |
| Sales | 03/05/2025 | (68) | $15.7500 | $1,071.00 |
| Sales | 03/05/2025 | (42) | $15.7500 | $661.50 |
| Purchases | 03/21/2025 | 176 | $16.5400 | ($2,911.04) |
| Purchases | 03/21/2025 | 97 | $16.5400 | ($1,604.38) |
| Purchases | 06/20/2025 | 23 | $13.5700 | ($312.11) |
| Purchases | 06/20/2025 | 12 | $13.5700 | ($162.84) |
| Sales | 08/18/2025 | (53) | $12.7600 | $676.28 |
| Sales | 08/18/2025 | (29) | $12.7600 | $370.04 |
| Purchases | 09/02/2025 | 4,503 | $13.1749 | ($59,326.57) |
| Sales | 09/19/2025 | (118) | $12.5000 | $1,475.00 |
| Sales | 09/19/2025 | (64) | $12.5000 | $800.00 |
| Sales | 09/26/2025 | (1,146) | $11.8035 | $13,526.81 |